UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SHAWN C. LUNDY,

    Petitioner,

v.                                          Case No. 2:03-cv-207
                                             HON. R. ALLAN EDGAR

TERRY SHERMAN,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

        Petitioner Shawn C. Lundy filed this petition for writ of habeas corpus challenging the validity of his state court conviction for second degree murder, assault with intent to murder and felony firearm. Petitioner was convicted after a jury trial on January 27, 2000, and on February 14, 2000, was sentenced to a prison term of 12 to 25 years.

        Petitioner was convicted for his involvement in the drive by shooting murder of LaWranza Robertson. Petitioner was a passenger in the car driven by co-defendant Mario Peterson. William Martin, who shot Robertson, was also in the car. The trio were driving around looking for specific individuals including Steven Brown. When they spotted Brown, who was with Robertson, Martin shot at Brown, striking and killing Robertson. Brown was walking Robertson to her home from a barbecue at the time of the shooting.

        Petitioner maintains that his conviction was obtained in violation of his federal rights. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States

Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner has raised the following issues in his petition:

I. Where Mr. Lundy was convicted in violation of the Due Process Clause under the U.S. Constitution at Fifth and Fourteenth Amendments, and Michigan State Constitution when the evidence used to convict petitioner was insufficient to support a verdict of guilty, did the prosecution fail to establish beyond a reasonable doubt that Mr. Lundy committed any act to support or to encourage a shooting or shared the principal's intent?

II. Was Mr. Lundy denied the benefit of effective assistance of counsel and a fair trial under the U.S. Constitution at Amendment Six and Fourteen, and Michigan State Constitution of 1963, at Art 1 §§ 17 and 20, when counsel failed to move for a mistrial where a police officer volunteered that he recognized Mr. Shawn Lundy when he arrested Mr. Lundy while essentially telling the jury that Mr. Lundy was a person with a history of involvement with police and therefore, was a bad man?

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective.  Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute.  Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district

court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.*

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court.

- 3 -

*See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 577 U.S. 1040 (1999).

Petitioner argues that there was insufficient evidence presented at trial to support his conviction. The Michigan Court of Appeals rejected this claim explaining:

> Defendant argues that the evidence established that he was "merely present" at the shooting and did not share Martin's intent, nor did he assist, encourage or support Martin. We disagree. Although there was no direct evidence that Lundy shared Martin's intent, shared intent can be inferred from the circumstances of the offense and defendant's statement to the police. Defendant told the police that "Ken [Martin] said we were going to ride until they saw Patrick [Bryant], Dywane, Steve [Brown] or Little Mo. . . . There was a plan. Ken was to be let out of the vehicle once they saw any of them. . . ."
>
> A motive for retaliatory violence was established by defendant's statement that Bryant had earlier shot at Peterson. Peterson and Martin came to defendant in a car apparently "rented" from a drug user even though all three defendants owned their own cars. The jury could infer that a car not associated with any of the defendants was used to avoid suspicion as they approached Brown, and to facilitate an anonymous getaway. The jury could further infer that Martin's plan was not simply to get out of the car when the previously-armed Bryant or his associates were located. It was unlikely that the plan was to merely drop Martin off, unarmed, in the street shortly after midnight to confront a potentially armed rival. Rather, the jury could infer from the testimony and circumstances that the plan involved retaliation in a form that could be executed by one person standing alone – namely, the use of deadly force. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to infer that defendant was part of the plan by serving as a front-seat lookout for Bryant or his associates and that he shared Martin's deadly intent.

Michigan Court of Appeals' decision at 2-3, docket #35.

A federal court sitting in habeas corpus review of a state criminal trial is to determine whether there was sufficient evidence of the essential elements of the crime to justify *any* rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be considered in the light most favorable to the prosecution. *Id.* It is clear that the evidence was sufficient to establish that petitioner committed the crime. Evidence was presented which could establish that petitioner was involved in a plan to use deadly force against specific individuals. The Michigan Court of Appeals decision was not contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that he received ineffective assistance of counsel when a police officer testified that he recognized petitioner when petitioner was arrested. Petitioner argues that from that statement the jury could infer that petitioner was a bad man because he was known by the police officer. The Michigan Court of Appeals rejected this claim explaining:

> We disagree that defendant was prejudiced by the unsolicited remark or that it amounted to a reference to other criminal acts. Witness Steven Brown had earlier testified that the police knew him (Brown), but he had no criminal record. Officer Michael Jackson testified that he had seen Brown in the neighborhood before, but did not know his name. Defendant has not shown that he was any different than Brown. It would have been reasonable for counsel to believe that the jury would conclude that, like Brown, defendant would be familiar on sight to police officers who patrolled that area. We will not assume that the potentially neutral statement was prejudicial.

Michigan Court of Appeals' decision at 3, docket #35.

In order to prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's errors were so serious that he was not functioning as counsel guaranteed by the

Sixth Amendment, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Bruner v. Perini*, 875 F.2d 531, 535 (6th Cir.), *cert. denied*, 493 U.S. 938, 110 S. Ct. 334 (1989) (citing *Strickland v. Washington*, 466 U.S. 668, 688-96, 104 S. Ct. 2052, 2065, 69, 80 L. Ed. 2d 647 (1984)).

There has been ineffective assistance of counsel where an attorney's performance is so deficient as to prejudice the defense and render the trial unfair and the result unreliable. *Wong*, 142 F.3d at 319; *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 1547 (1998). Even if a court determines that counsel's performance was outside the wide range of professionally competent assistance, the petitioner is not entitled to relief if his counsel's error had no effect on the judgment. *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Rather, a petitioner must show that the probability that the outcome of the case would have been different but for counsel's unprofessional errors is sufficient to undermine confidence in the result. *Wong*, 142 F.3d at 319; *Austin*, 126 F.2d at 848. "The performance and prejudice components of the *Strickland* test are mixed questions of law and fact." *Austin*, 126 F.2d at 848.

The court's review of defense counsel's performance is highly deferential, and defense counsel is presumed to have rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy. *Wong*, 142 F.3d at 319; *Austin*, 126 F.3d at 848. The petitioner must overcome the presumption that, under the circumstances, the challenged actions might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Petitioner claims that counsel should have objected to the statement made by the police officer. The statement was unsolicited and so innocuous that it could have no effect on the outcome of the trial. The officer testified: "I requested uniform officers to come with us. We

went up and knocked on the apartment door. A female opened the door. I saw and recognized Mr. Lundy inside. I entered and arrested him." Petitioner cannot show ineffective assistance of counsel as a result of the officer's statement. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could

not find that a dismissal of each of petitioner's claims was debatable or wrong.  Sufficient evidence was presented at trial to support petitioner's conviction, and petitioner cannot show that his counsel was ineffective for failing to object to a unsolicited statement made by a police officer witness.  Therefore, the undersigned recommends that the court deny petitioner a certificate of appealability.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal those issues or claims addressed or resolved as a result of the Report and Recommendation.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley  
TIMOTHY P. GREELEY  
UNITED STATES MAGISTRATE JUDGE

Dated:   November 29, 2005